**DISTRICT OF COLUMBIA, Petitioner,**

v.

**Joseph E. JONES and Marjorie B. Jones, t/a Joseph E. Jones Agency, et al., Respondents.**

**No. 14785.**

United States Court of Appeals District of Columbia Circuit.

Argued May 25, 1959.

Decided Oct. 2, 1959.

**940**

Mr. Leo J. Ehrig, Jr., Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corporation Counsel, Milton D. Korman, Principal Asst. Corporation Counsel, and Henry E. Wixon, Asst. Corporation Counsel, were on the brief for petitioner.

Mr. Hymie Nussbaum, Washington, D. C., with whom Mr. Nathan Sinrod, Washington, D. C., was on the brief, for respondent.

Before WASHINGTON, DANAHER and BURGER, Circuit Judges.

BURGER, Circuit Judge.

The District of Columbia seeks review of a holding of the Tax Court that respondents, Joseph E. and Marjorie B. Jones, husband and wife, and partners in an unincorporated insurance agency, were entitled to a franchise tax refund for the calendar years 1949–1952, and for part of 1953, amounting to $11,602.-97. For the reasons outlined below, we hold the Tax Court erred in deciding that respondents were exempt from franchise taxation under the clause exempting partnerships in which more than 80% of the gross income is derived from personal services actually rendered by the partners thereof.

Jones and his wife conducted an insurance agency business trading as the "Joseph E. Jones Agency." This agency acted as a general agent for two insurance companies, Mutual Benefit Health and Accident Ass'n, and United Benefit Life Ins. Co. In addition to Joseph Jones, and his wife, who served as office manager for the partnership, the agency consisted of various departments, namely, the cashier's department, the claims department, and the casualty and brokerage department. About 30–50 employees were engaged in clerical work in these units, while about 50 subagents were employed in the field to solicit business. These subagents were responsible for the personal solicitation and interviewing of new insurance applicants, receiving their "leads" to a large extent from the agency, which had previously developed such leads through advertising and direct mail. Mr. Jones supervised the entire structure, hiring and training subagents, preparing advertising, handling group insurance, directing claims adjustments, etc.

The pertinent statute in dispute is Section 1, Art. 1, Title VIII, District of Columbia Income and Franchise Tax of 1947, 61 Stat. 345, D.C.Code § 47–1574 (1951), which defines an unincorporated business and exempts from the franchise tax "any trade or business in which more than 80 per centum of the gross income is derived from the personal services actually rendered by the * * * *members of the partnership* * * *." (Emphasis added.) It is undisputed that Mr. and Mrs. Jones are the only members of the partnership here involved.

The only source of agency income was commissions paid by the insurance companies based upon total premiums collected by the agency. During the years in question, the agency received as income a gross commission figure attributable to the agency's entire operations, and of this figure approximately 40% was then paid by the agency to the subagents as commissions. For example, during 1949 (a typical year) gross com-

missions earned by the agency totaled (in round figures) $310,000, of which $141,000 went towards payment of subagent commissions, and $115,000 towards general operations expense (including salaries of clerical help), leaving a profit of $53,000 for the partners. The District assessed franchise taxes on the respondents for the years in question, and the respondents appealed the assessment to the Tax Court, claiming that the controlling provisions of the District of Columbia Income and Franchise Tax Act above referred to specifically exempt certain organizations of which their agency was one, from franchise taxation.[1]

The Tax Court found that more than 80% of the gross income of the partnership was derived from the personal services rendered by Mr. and Mrs. Jones, thus putting their agency into the exempt category. In so doing, the Tax Court relied primarily on Fred C. Sanborn, 1930, 19 B.T.A. 495, nonacq. withdrawn, I.T. 2567, X-1 Cum.Bull. 230 (1931), and on its own prior unreported decision in Defenderfer v. District of Columbia, No. 1281 (1952), which followed the Sanborn case.

We believe this reliance on Sanborn was misplaced, and that the controlling precedents are District of Columbia v. Adair, 1952, 90 U.S.App.D.C. 368, 196 F.2d 603, and District of Columbia v. Ghent, 1955, 95 U.S.App.D.C. 103, 220 F.2d 210.

The Sanborn case involved a provision of the Revenue Act of 1926, which allowed taxpayers to take certain deductions against "earned income." Sec. 209 (a), 44 Stat. 20–21. Earned income was defined as "wages, salaries * * * [etc.] received as compensation for personal services actually rendered." The taxpayer, in that case, was also a general insurance agent, who in turn employed subagents, paying them from the gross commissions remitted to the agency by the insuring companies. For the years under consideration, Sanborn's gross commission totaled $140,000, and the subagents' commissions and general office expense totaled $106,000, leaving a balance to the taxpayer of $37,000, referred to as *"net commissions."* The sole question in the Sanborn case was whether this entire *net commission figure* ($37,000) was to be considered "income from the rendering of personal services," or whether that amount should be attributed not only to the taxpayer's services, but to the services of his subagents as well. In this context, the United States Board of Tax Appeals held that the *net commission figure* was directly attributable to the personal skill and ability of the taxpayer.

However, in the case now before us, it is obvious that we are concerned with gross commissions rather than the *net* commission or net profit earned by Jones. The test of exemption under the franchise statute is whether 80% of the *gross* income of the taxable entity is derived from personal services rendered by Mr. and Mrs. Jones. And it is clear that the true gross income ($310,000 for 1949) was not only derived from the services of the partners, but was, in a large measure, attributable to the activities of the soliciting subagents, who of necessity were responsible for the solicitation of new insurance applications, the premiums from which were the basis of all commission payments to the agency partners. Furthermore, it must be remembered that these subagents received as remuneration 40% of the gross commissions remitted to the agency. While it is true that the percentage of gross income paid as salaries does not automatically determine the percentage of gross income attributable to

1. The statute reads in part as follows:
"Sec. 1—*Definition of Unincorporated Business*— * * * The words 'unincorporated business' do not include any trade or business which by law, customs, or ethics cannot be incorporated or any trade, or business in which more than 80 per centum of the gross income is derived from the personal services actually rendered by the individual or members of the partnership or other entity in the conducting or carrying on of any trade or business and in which capital is not a material income-producing factor."

the efforts of the recipients, District of Columbia v. Adair, supra, it is useful as a guide. Where the sole source of such income consists of commissions on premiums, and where employees specifically engaged in solicitation receive 40% of that income, we think it cannot fairly be said that more than 80% of that income is "derived from the personal services actually rendered by the * * * members of the partnership." In District of Columbia v. Ghent, supra, the taxpayer was sole proprietor of an engineering firm, which employed "free lance" draftsmen and independent engineering contractors in the rendering of services to the firm's customers. In that case, the employees and independent contractors received between 40% and 55% of the gross income as compensation. Under those facts we stated that "respondent * * * cannot be said to have produced more than 80% of the gross income of the business by 'personal services actually rendered' by [taxpayer]." 95 U.S. App.D.C. at page 104, 220 F.2d at page 211. There, as here, the major income producing activity was engaged in both by the taxpayer and his numerous employees, with the latter receiving a substantial portion of the gross income as compensation. The Ghent case is controlling here, and the decision of the Tax Court must be reversed and the case remanded for the entry of judgment accordingly.

Reversed and remanded.